The STATE of Ohio, Appellee,

v.

ANDERSON, Appellant.

[Cite as *State v. Anderson* (1995), 100 Ohio App.3d 688.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 94 CA 2036.

Decided Jan. 25, 1995.

<span style="background:black"> </span>

---

*Thomas M. Spetnagel,* for appellant.

*Judith A. Heimerl,* for appellee.

---

GREY, Judge.

This is an appeal from a judgment of the Municipal Court of Chillicothe, Ohio. Anderson was charged with possession of drug paraphernalia and possession of marijuana. He filed a motion to suppress, which was denied. After his motion was denied, Anderson changed his plea to no contest. The charge of possession of drug paraphernalia was dismissed and he was found guilty of possession of marijuana. We reverse.

At approximately 4:00 p.m., on December 30, 1993, Trooper Staley of the Ohio Highway Patrol was on routine patrol on U.S. Route 33 in Ross County. Staley was working as part of a two-man, two-car force designed to aggressively pursue minor traffic violations in the hopes of making a drug arrest, *i.e.,* part of a drug interdiction program. In the patrol car with Staley was a dog, trained to sniff out substances of abuse. Trooper Staley noticed a car with tinted windows driven by Anderson and, since he suspected that the tint was darker than that permitted by law, he pulled the vehicle over. The dog remained in the patrol car and Staley and the other officer approached Anderson's vehicle.

When asked about the tint, Anderson said he recently received a citation for excessive window tint and hadn't had sufficient time to remove the tint or pay the fine. Staley decided to issue a warning ticket rather than a uniform traffic citation. After issuing the ticket, Staley asked Anderson if he had any drugs, weapons or drug paraphernalia in the car. Anderson admitted he had some wrapping papers, a pipe and a little marijuana. He was arrested for violating R.C. 2925.11(C)(3), possession of marijuana, and R.C. 2925.14, possession of drug paraphernalia.

On January 12, 1994, Anderson waived his speedy trial rights. On May 5, 1994, he filed a motion to suppress. The hearing was held on May 16, 1994. At the conclusion of the hearing, his motion was denied. Anderson changed his plea to no contest and the charge of possession of drug paraphernalia was dismissed.

He was found guilty of possession of marijuana. Anderson timely filed a notice of appeal and assigns the following error.

"The trial court erred in overruling appellant's motion to suppress."

Anderson advances three arguments to support his assignment of error. First he says, after the warning ticket was issued, further detention was a violation of his Fourth Amendment Rights. Next, he says Trooper Staley had no reasonable articulable suspicion that any further criminal activity was afoot. He concludes by arguing that, even if his detention was proper, his consent to search was not voluntarily given.

We begin by noting that appellant appears to have merged App.R. 16(A)(3) and 16(A)(7). App.R. 16(A)(3) requires separate assignments of error, while App.R. 16(A)(7) specifies that each assignment of error is to be followed by a separate argument. In the interest of justice we view Anderson's appeal as a challenge to the propriety of the questioning initiated by Trooper Staley and the extended detention necessary to complete that questioning.

The state argues that merely asking a motorist, who has been stopped for a minor traffic violation, whether there is any contraband in the vehicle is innocuous, carries no Fourth Amendment implications and is not overly intrusive. Implicit in this argument is that, since Anderson was free to leave, *Miranda* warnings were unnecessary.

■ In reviewing a motion to suppress, we accept the trial court's findings of fact and rely on its ability to evaluate the credibility of the witnesses. *State v. Clay* (1973), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137. We then independently determine, without deference to the trial court, whether the court has applied the appropriate legal standard. *State v. Simmons* (Aug. 30, 1990), Washington App. No. 89CA18, unreported, 1990 WL 127065.

■ In *Delaware v. Prouse* (1979), 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673–674, the Supreme Court of the United States held that random stops of motor vehicles are violative of Fourth Amendment protection unless there is at least a reasonable and articulable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law. In Ohio, an investigatory stop of a motor vehicle is permissible when specific articulable facts exist to justify a reasonable suspicion that the driver violated the law. *State v. Chatton* (1984), 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237.

■ Pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, an officer may briefly detain an individual while he investigates the suspicious behavior which gave rise to the stop. A detention conducted according to

*Terry* standards requires a reasonable and articulable suspicion of criminal activity. *United States v. Sharpe* (1985), 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605. The articulable and reasonable suspicion must exist in the officer's mind at the time of the stop and cannot be based on facts obtained after the initial stop. *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044. See, also, *Prouse, supra; State v. Brandenburg* (1987), 41 Ohio App.3d 109, 534 N.E.2d 906; *State v. Heinrichs* (1988), 46 Ohio App.3d 63, 545 N.E.2d 1304; *Chatton, supra.*

When a reviewing court determines whether the stop was proper, it must consider the totality of the circumstances. *Freeman, supra,* at syllabus. See, also, *State v. McCaig* (1988), 51 Ohio App.3d 94, 554 N.E.2d 925. An investigatory stop must be justified by some objective manifestation that the person stopped is engaged or about to engage in some form of criminal activity. *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 694–695, 66 L.Ed.2d 621, 628–629. Furthermore a brief stop of a suspicious individual to determine his identity or to maintain the *status quo* may be most reasonable in light of the facts known to the officer at the time. *State v. Williams* (1990), 51 Ohio St.3d 58, 60, 554 N.E.2d 108, 110–111, citing *Terry, supra.* These circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene, who must react to events as they unfold. *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1272–1273, citing *United States v. Hall* (C.A.D.C.1976), 525 F.2d 857, 859. Hence, the test is objective in nature, *i.e.,* "[w]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *State v. Bobo* (1988), 37 Ohio St.3d 177, 178–179, 524 N.E.2d 489, 491.

The record shows Staley stopped Anderson because he believed the window tint on Anderson's car surpassed that allowable by law. The trial court found, and we agree, that Trooper Staley had a reasonable articulable suspicion to warrant an investigatory stop. The question thus becomes whether, after Staley's suspicions regarding excessive window tint were confirmed, there was a reasonable articulable suspicion to warrant further investigation into unrelated matters.

We begin by noting that the facts here are unlike the typical minor traffic stop which leads to the more serious drunk driving arrest. In the majority of those cases, the officer forms a reasonable articulable suspicion to support investigation of drunk driving because he detects an odor of alcohol, he sees bloodshot eyes and he hears slurred speech. A question of whether the driver, in such an instance, has been drinking is most reasonable in light of the concomitant

conditions. Here, absent the answer to Staley's question regarding contraband, there is no reasonable articulable suspicion that further criminal activity was afoot. These minor traffic stops with accompanying questions which, under any other condition, would carry Fourth Amendment implications, appear as little more than a subterfuge to bypass the rules of search and seizure.

In *State v. Smotherman* (July 29, 1994), Wood App. No. 93WD082, unreported, 1994 WL 395128, the Sixth District followed the rationale of *State v. Retherford* (1994), 93 Ohio App.3d 586, 639 N.E.2d 498. In 09 *Smotherman*, the defendant was stopped for speeding and for having a defective bumper. The trooper asked whether there were any guns or drugs in the vehicle and Smotherman replied "no." After handing Smotherman the traffic citation and telling him he was free to leave, the officer asked if he could search the vehicle. He did not tell Smotherman that he was free to refuse the request. The search turned up two partially smoked marijuana joints and a stem. Smotherman was charged with possession of drug paraphernalia and drug abuse. His motion to suppress was denied and he was found guilty. In reversing the denial of the motion to suppress, the Sixth District stated:

"It has come to this court's attention that the patterns and practices of the officer in the case sub judice and officers in other Ohio cases are strikingly similar. The patterns and practices are so strikingly similar that it appears that these officers are following a 'script' in regard to seeking consent to search the vehicles of any and all citizens travelling the Ohio roads and highways who are stopped for traffic violations even in the absence of articulable suspicions that would justify further detention and/or further inquiry."

Police officers may not detain an individual, "even momentarily," without "reasonable, objective grounds for doing so." *Retherford, supra,* at 595, 639 N.E.2d at 504, citing *Florida v. Royer* (1983), 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229. See, also, *State v. Andrews, supra,* 57 Ohio St.3d 86, 565 N.E.2d 1271. In order to justify a seizure of the magnitude of a limited investigative stop, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, warrant that intrusion. *Terry, supra,* 392 U.S. at 21, 88 S.Ct. at 1879–1880, 20 L.Ed.2d at 905–906; *State v. Williams, supra,* 51 Ohio St.3d 58, 554 N.E.2d 108.

In *State v. Retherford, supra,* 93 Ohio App.3d 586, 639 N.E.2d 498, Retherford was stopped for speeding. After the officers gave her the traffic citation, they told her she was free to go and began a casual conversation among themselves. Before she could leave, one of the officers casually asked whether she was carrying any large sums of money, drugs or weapons. She replied "no" and the officer asked if she would mind if they searched her car. She consented and the

search turned up marijuana and pipes used for smoking marijuana. She was arrested and found guilty of drug abuse. The Second District reversed.

The scope of the detention and of any questioning or search subsequent to an investigatory stop and pursuant to the detention must be "carefully tailored." *Retherford,* 93 Ohio App.3d at 596, 639 N.E.2d at 505, citing *Royer, supra.* The search incident to an investigatory stop can be justified if it is within the scope of the lawful detention and if the suspect voluntarily consents to the search.

We believe the language of *Retherford,* at 600–601, 639 N.E.2d at 508, capsulizes the issue:

"We are not saying an officer cannot engage in casual conversation or ask a few general questions of detainee or suggesting that consent can never be sought during a lawful detention without creating an illegal detention. What we are saying is that casual conversation, the general questions, or the request for consent cannot be used to impermissibly broaden the investigative scope of the initial detention in the absence of a reasonable articulable suspicion that further criminal activity is afoot."

Voluntariness is a question of fact and depends on the totality of the circumstances. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854. The government bears the burden of proving that the defendant's consent was "freely and voluntarily" given. *Royer,* 460 U.S. at 497, 103 S.Ct. at 1323–1324, 75 L.Ed.2d at 235–236. The government cannot meet this burden when all it proves is mere submission to a claim of lawful authority. If the defendant consents while he is illegally detained, that consent is void unless the government proves that it was not the product of the illegal detention but rather the result of an independent act of free will. Again, *Retherford,* 93 Ohio App.3d at 602, 639 N.E.2d at 509, sets forth the standard:

"The consent will be held voluntary only if there is proof of an unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior illegal action."

Staley admitted that his intent was to aggressively pursue minor traffic violations in the hopes of making a drug arrest. The fact that he had a dog, trained in sniffing out substances of abuse, leads to the unmistakable conclusion that Staley was primarily concerned with drug enforcement rather than traffic enforcement. While Staley may have had a reasonable articulable suspicion that Anderson's windows contained too much tint, there is nothing in the record, prior to Staley's question, that would lead to a reasonable articulable suspicion Anderson was harboring contraband. We view this as little more than a glorified fishing trip.

One final comment on *Retherford* should be made. That opinion noted that some police agencies are beginning to routinely ask for consent to search in all traffic stops even if the officer has little or no suspicion of illegal activity. Apparently, most people are unaware of their right to refuse, or are intimidated by the officer's presence, and give consent. Most people are law-abiding citizens and not criminals or transporters of contraband, and so the search of their cars and personal property results in no criminal charges. Nonetheless, these searches must have an enormous social cost. Law-abiding citizens who submit to these kinds of searches are likely to feel resentful, embarrassed, and violated as police officers rummage about through their private possessions. This kind of conduct drives a wedge between the police and ordinary citizens who believe, not unreasonably, that the courts protect criminals but not ordinary people. Professional criminals know their rights and will not consent to a search, while ordinary citizens stand helpless, they believe, to object. The courts have an obligation to protect the ordinary citizen from intrusive, illegal and overbearing government action.

Anderson was pulled over for excessive window tint, a minor misdemeanor. There were two police officers, each of whom arrived in a separate patrol car. They approached his vehicle, one on each side of his car, accompanied by a dog police-trained in drug detection. Anderson said he did not feel free to leave after receiving the warning ticket. There was no reasonable articulable suspicion to warrant any further investigation of Anderson. The state offered nothing to show Anderson's consent to the search was voluntary, other than his mere submission to Staley's request.

Anderson's assignment of error is well taken and is sustained. The judgment of the trial court is reversed.

*Judgment reversed.*

HARSHA, P.J., and STEPHENSON, J., concur.