OPINION
Defendant/appellant David George appeals the September 4, 1998, Judgment Entry of The Municipal Court, City of Lancaster, Ohio, overruling defendant's motion to dismiss/suppress. Plaintiff/appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS
On June 1, 1998, Patrolman Simcox of the Pickerington Police Department was patrolling on Hill Road in the City of Pickerington, Ohio. Patrolman Simcox testified that he stopped appellant due to a traffic control signal violation at the intersection of Hill Road and Refugee Road. After stopping appellant and noticing an odor of an alcoholic beverage, Patrolman Simcox asked appellant to perform a series of field sobriety tests. Following the field sobriety tests, appellant was placed under arrest and transported to the Pickerington Police Department. At the Pickerington Police Department, appellant consented to a test on a B.A.C. DataMaster, the results of which were .165 grams of alcohol per 210 liters of breath. Defendant/appellant David J. George, was subsequently charged with operating a motor vehicle in violation of the Codified Ordinances of Pickerington 333.01(A)(1) (O.M.V.I.), 333.01(A)(3) (O.M.V.I., per se) and 313.01 (Traffic Control Device). Following his arraignment, appellant filed a Motion to Suppress based on constitutional grounds and the State's failure to comply with the rules and regulations promulgated by the Ohio Department of Health in the administration of his breath test. The original motion was filed on July 30, 1998. On September 1, 1998, appellant filed a supplement to the previously filed motion setting forth more specific facts supporting the allegation that there had not been substantial compliance with Ohio Administrative Code3701-53-04(A)(1). On September 3, 1998, a hearing was held on appellant's original motion as well as the supplement. The following evidence was presented at the hearing: Ohio Administrative Code Sec. 3701-53-04 requires that breath testing instruments be checked every seven days for proper calibration using a solution approved by the Director of the Ohio Department of Health. Evidence presented at the hearing showed that the Pickerington Police Department used bottle Number 22 of Miami Valley Calibration Solution, Batch Number 49, to perform the weekly instrument checks before and after the appellant's test. The target value of Bottle 22 was .100 grams of alcohol per 210 liters of breath. The below chart indicates the relevant sequential use history of Bottle Number 22: Test Date Time Number Result Location in Record
3/23/98 Bottle Number 22 Placed Into Service
 4/6/98 8:12 AM 98-073 .094 Defendant's Ex. A 4/6/98 8:24 AM 98-074 .100 State's Ex. NO. 12 NO. 13 5/18/98 3:28 PM 98-091 .094 Defendant's Ex. B 5/18/98 3:56 PM 98-092 .097 State's Ex. NO. 14 NO. 15 5/26/98 4:33 PM 98-101 .097 State's Ex. NO. 5 
NO. 6 6/1/98 1:59 PM 98-108 .165 State's Ex. NO. 2 NO. 4 6/1/98 7:52 PM 98-109 .099 State's Ex. NO. 7 NO. 8
The evidence showed that on April 6, 1998, at 8:12 A.M., senior operator Officer Planck performed an instrument check, identified as test number 98-073. The result was a reading of 0.094 grams of alcohol per 210 liters. (This result was .006 grams below the target value of .100. OAC regulations allow a deviation of +/- .005 from the target value of the test solution.) Officer Planck testified that he then checked the date of first use of that bottle of solution. Tr. 108. When Officer Planck noted that the bottle was opened "like two weeks earlier", he looked around and saw that the simulator to the B.A.C. DataMaster had a kink in it. Tr. 108. Officer Planck testified that his understanding of the pertinent regulations instructed him to open a new bottle of solution, if you think the problem causing the invalid reading is the solution. Tr. 110. At 8:24 A.M., on April 6, 1998, Officer Planck re-tested the equipment, using solution from the same bottle, bottle number 22. This test resulted in a reading of 0.100 grams of alcohol per 210 liters. On May 18, 1998, the weekly calibration was conducted by senior operator Officer Annis. Officer Annis is a patrolman with the Pickerington Police Department. A result of 0.094 was received at 3:28 P.M., identified as test number 98-092. Upon receiving a test result outside of the allowable tolerance, Officer Annis testified that he did not think he had allowed the solution to heat to the prescribed temperature as is required by the instrument's checklist. Tr. at 116. However, Officer Annis documented on the failed test's checklist at the time of the test that the appropriate temperature had been obtained. The officer testified that he thought he had looked at the temperature gauge at an angle when he initiated the test, which led him to believe the solution was at the correct temperature. Both officers testified that they considered the tests that resulted in findings of 0.094 grams of alcohol per 210 liters a "failed instrument check under the applicable rules and regulations governing the administration of breath tests." Tr. at 111 and 118. On June 1, 1999, defendant/appellant was given a breath test using the same equipment and the same bottle of solution as was used on the April 6, 1999, and May 18, 1999, tests. The result showed 0.165 grams of alcohol per 210 liters of breath. The trial court found that there had been two failed instrument checks and that the State had failed to show substantial compliance with Ohio Department of Health regulations. Tr. at 143. However, the trial court found no prejudice to the Defendant and denied Defendant's motion to suppress the breath test. On November 30, 1998, appellant entered a plea of no contest to a violation of the Codified Ordinances of Pickerington 331.01(A)(3), the per se violation. The charge of driving under the influence of alcohol filed under Codified Ordinances of Pickerington, Section 333.01(A)(1), and the traffic control device charge, under 313.01, were dismissed without prejudice, by the State's motion of Nolle Prosequi. The trial court noted in its entry that these charges could be refiled pending the outcome of the appeal. The trial court entered a finding of guilty upon appellant's no contest plea and stayed execution of the sentence pending appeal.
ASSIGNMENT OF ERROR I
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT BY ADMITTING INTO EVIDENCE A BREATH TEST RESULT PRODUCED BY A MACHINE WHOSE CALIBRATION ACCURACY HAD BEEN CHECKED USING A CALIBRATION SOLUTION WHICH SHOULD NOT HAVE BEEN USED DUE TO TWO PRIOR FAILED INSTRUMENT CHECKS. THE USE OF THIS CALIBRATION SOLUTION AFTER TWO FAILED INSTRUMENT CHECKS DOES NOT CONSTITUTE SUBSTANTIAL COMPLIANCE WITH THE OHIO DEPARTMENT OF HEALTH RULES AND REGULATIONS.
ASSIGNMENT OF ERROR II
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT WHEN IT ADMITTED INTO EVIDENCE A BREATH TEST AFTER IT FOUND THAT THE PROSECUTION HAD FAILED TO PROVE SUBSTANTIAL COMPLIANCE WITH THE OHIO DEPARTMENT OF HEALTH RULES AND REGULATIONS GOVERNING WEEKLY INSTRUMENT CHECKS OF THE MACHINE WHICH PRODUCED THE DEFENDANT'S TEST RESULT.
 I
Appellant contends that the calibration requirements for breath-testing devices were not met in appellant's case. R.C.4511.19(A)(3) is a strict liability statute in which accuracy of the breath test results are of paramount importance in determining a defendant's guilt or innocence. Defiance v. Kretz (1991),60 Ohio St.3d 1, 573 N.E.2d 32. The State has the burden of proof to show that the test was administered in substantial compliance with the methods prescribed by the Director of Health of the State of Ohio. State v. Plummer (1986), 22 Ohio St.3d 292, 294-295,490 N.E.2d 902, 22 O.B.R. 461. Appellate review of a decision on a motion to suppress is de novo. State v. Anderson (1995),100 Ohio App.3d 688, 691, 654 N.E.2d 1034; State v. Karns (July 21, 1998) Fairfield No. 97CA002, unreported, 1998 WL 550708. The Ohio Administrative Code [hereinafter OAC] sets forth standards and regulations for maintaining and checking the calibration of breath testing instruments and administering tests. Ohio Administrative Code section 3701-53-04 requires the following tests: (A) A senior operator shall perform an instrument check on approved evidential breath testing instruments and a radio frequency interference (RFI) check no less frequently than once every seven days in accordance with the appropriate instrument checklist as set forth in appendices A to D to this rule. The instrument check may be performed up to one hundred and ninety-two hours after the last instrument check.
 (1) An instrument shall be checked using an instrument check solution containing ethyl alcohol approved by the director of health. An instrument check is valid when the result of the instrument check is at or within five one-thousandths (0.005) grams per two hundred ten liters of the target value for that instrument check solution. An instrument check solution shall not be used more than three months after its date of first use. An instrument check solution approved by the director after the effective date of this rule shall not be used after the manufacturer's expiration date but in no event shall the solution be used more than three years after its date of manufacture, notwithstanding the manufacturer's expiration date. Results of an instrument check which are outside the range specified in this paragraph shall be confirmed by the senior operator using another bottle of instrument check solution. If this instrument check also is out of the range, the instrument shall not be used until the instrument is serviced.
The instrument used in this case was a B.A.C. DataMaster. The results of tests required under OAC 3701-53-04 are to be recorded on a form as identified in the Appendix to OAC 3701-53-04. This form, applicable to the B.A.C. DataMaster, provides a checklist which the senior operator is to follow to ensure a proper test. The senior operator is to mark off the checklist steps which have been met. Appellant contends that the regulations regarding steps to be taken when an instrument check provides a result which exceeds the allowable deviation of plus or minus five one-thousandth's (0.005) grams per two hundred ten liters from the target value for that instrument check solution were not followed. The applicable OAC section states that when results of an instrument check are outside of the range specified as permissible variance, plus or minus .005, the senior operator shall confirm that test result by using another bottle of instrument check solution. OAC 3701-53-04(A)(1). If the second instrument check is also outside of the variance, the instrument shall not be used until the instrument is serviced. Id. On May 18, 1998, senior operator Patrolman Annis, of the Pickerington Police Department, performed an instrument check. The B.A.C. DataMaster Instrument Check Form for this test indicates that the officer followed the outlined steps, numbered 1 through 6. The officer used bottle number 22 with a target value of .100 (+/- .005). The test result was 0.094. This result exceeded the deviation from the target value by more than the allowable tolerance. Although the test results exceeded the allowable deviation, the senior operator did not confirm the test using a new bottle of solution. Thus, we find that the operator did not substantially comply with the requirements of the OAC regarding instrument checks. The appellee concedes that when there has been a failed calibration check using a specific solution bottle, a second check must be run with a new bottle. Brief of plaintiff/appellee, page 4. However, the appellee urges us to find that there was no failed calibration check and, therefore, there was no need to test the equipment with a new bottle of solution. Appellee argues that before any check can be considered valid, it must first be conducted properly. Appellee defines a properly conducted calibration check as one which is conducted in accordance with the instructions on the checklist. Appellee argues that the senior operator failed to properly follow item 4 of the checklist and began the test before the simulator reached the required temperature of 34 degrees plus or minus .2 degrees Celsius. Therefore, appellee argues, that operator could re-test the machine, complying with all items on the checklist, using the same solution. In other words, appellee argues, that the first test was a nullity because it was not conducted pursuant to the checklist. Even if we were to accept the theory set forth by appellee, we find that theory inapplicable to the case sub judice, because we find that the checklist was followed for the first test on May 18, 1998. Patrolman Annis, the senior operator on the May 18, 1998, test date, indicated that item 4 on the checklist had been accomplished. He placed a checkmark in the appropriate place and placed his initials at the end of the instructions contained in Item 4. An instrument check was conducted, resulting in a test result of .094. Officer Annis knew that this test constituted a "failed instrument check." However, Officer Annis testified at the suppression hearing that during the printout stage of the first test, he noticed that the simulator had not warmed to the temperature required by the checklist. Thus, appellee argues, this testimony of Officer Annis shows that the checklist was not followed and the first test is a nullity not requiring a re-test with a different bottle of solution and the written, initialed checklist completed by Officer Annis was incorrect. However, we do not find that the testimony of Officer Annis on this point was certain enough to overcome the information recorded on the checklist contemporaneous with the time the first test was performed. Officer Annis testified that, "I think my problem was when I initiated the test I was looking at the temperature gauge at an angle." (Emphasis added). Tr. at 116. Therefore, we find that 1) the checklist was followed on the first test on May 18, 1998, 2) the result of that test was .094 which was not within the permitted deviation from the target value for the test solution, and 3) any subsequent testing of that machine should have been with a new bottle of test solution according to the OAC. We are aware that rigid compliance with the Department of Health regulations is not necessary in order for test results to be admissible. State v. Plummer (1986), 22 Ohio St.3d 292, 294,490 N.E.2d 902. However, while "there is leeway for substantial, though not literal compliance with such regulations," Id., we find that the rules and regulations were not substantially complied with in this case. We agree with State of Ohio v. Garcia (January 16, 1998), Fulton App. No. F-97-020, unreported 1998 WL 15921. In Garcia, the Sixth Appellate District found that an operator's failure to use a different bottle of solution following a calibration check outside the required range did not constitute substantial compliance with ODH regulations and rendered subsequent checks suspect. Garcia at 3. Therefore, we conclude, in the case sub judice, that the breath alcohol test performed on appellant is suspect as to results (because the machine used was still being tested with solution that had yielded a failed test result) and should have been suppressed by the trial court. Assignment of error I is sustained, as to the May 18, 1998, test result. Given our disposition of appellant's first assignment of error in regard to the instrument check test conducted on May 18, 1998, we need not address the April 6, 1998, test result.
 II
In his second assignment of error, appellant argues that prejudicial error was committed when the trial court admitted a breath test into evidence after a finding that the state failed to prove substantial compliance with the Ohio Department of Health Rules and Regulations. We agree. The state has the burden of proof to show that a breath test was administered in substantial compliance with the applicable rules and regulations. State v. Plummer (1986), 22 Ohio St.3d 292, 294-295, 490 N.E.2d 902, 22 O.B.R. 461. A defendant needs to show prejudice in order to prevail only after the State has shown substantial compliance. Id. at 295. As discussed in assignment of error I, we agree with the trial court that the state failed to show substantial compliance in this case. Therefore, we find that it was prejudicial error for the trial court to subsequently require a showing of prejudice by the appellant. Assignment of error II is sustained.
For the foregoing reasons, the judgment of the Municipal Court of Lancaster, Fairfield County, Ohio, convicting appellant of the Codified Ordinances of Pickerington, Ohio, Section 333.01(A)(3), is vacated, the ruling on the motion to suppress is reversed and this matter is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
By: Edwards, J. Wise, P.J. and Farmer, J. concur.