OPINION
Defendant-appellant, Kimberly Becherer, appeals her conviction in the Warren County Court of Common Pleas for possession of cocaine.
In the early morning hours of September 20, 1998, Patrolman Daniel Bentley of the Springboro Police Department was traveling northbound on State Route 741 when he observed a vehicle being operated by appellant weaving on southbound on State Route 741. The officer testified that as appellant passed him, appellant's car was "either on or over" the yellow centerline. The officer turned his cruiser around and began following appellant. However, by then, a pickup truck was traveling between appellant's car and the officer. Appellant's car and the pickup truck turned westbound on Pennyroyal Road and the officer followed them. While on Pennyroyal Road, and despite the presence of the truck, the officer observed appellant continuously weaving across the centerline and into the middle of the road for the entire length of the road (one and one-half miles).
The trio of vehicles came to a stop sign at the end of Pennyroyal Road. Appellant turned right and the pickup truck turned left. As appellant turned right, she crossed completely over onto the opposite lane of travel and was traveling west in the eastbound lane before eventually returning to her proper lane. Thereafter, appellant turned right onto Woods Road. Again, appellant "got into the southbound lane of travel and continued in the oncoming lane of travel for approximately 60 to 80 feet before recovering back into [her] lane." At that point, the officer stopped appellant's vehicle.
Appellant, who had a strong odor of alcohol about her person, admitted she had been drinking that evening. Appellant was arrested and placed in the back of the officer's cruiser after she performed poorly on four field sobriety tests. There was a male passenger in the front passenger seat. The officer testified that the passenger had glassy, bloodshot eyes and slurred speech, and was extremely intoxicated. The officer testified that the passenger admitted being very intoxicated. The passenger was in no condition to drive appellant's car which, at the location of the stop, was illegally parked. Given this set of circumstances, the officer decided to impound and inventory appellant's car pursuant to a Springboro Police Department written policy. The inventory took place at the scene with the help of a fellow officer who had arrived for backup. At the time of the inventory, appellant was in the officer's cruiser and her passenger was in another cruiser.
When the officer opened the driver's side door, an "overwhelming odor of marijuana" came from the car. On the driver's seat was a purse. As part of the inventory of the car, the officer searched the purse[1] and discovered inside a baggie containing fourteen grams of marijuana and another baggie containing three grams of cocaine. Upon completion of the inventory of the car, the officer returned to his cruiser with the purse. The parties disagree as to what happened next.
The officer testified that as soon as he returned to his cruiser with the purse, appellant asked him if there was a problem. The officer told her that "there might be." Thereafter, appellant kept asking the officer if there was a problem and if he had found anything in her purse. The officer refused to answer her questions and told appellant to wait until they were at the police station. The officer testified that appellant eventually blurted out that the marijuana was hers but that she was transporting the cocaine for someone else.
Appellant testified that when the officer returned to his cruiser, he asked her if it was her purse. The officer then told her that she was "in big trouble now." When appellant asked why, the officer replied that they would talk about it later. Appellant testified that they continued to discuss it while on their way to the police station.
On December 29, 1998, appellant was indicted on one count of possession of cocaine in violation of R.C. 2925.11(A). On February 9, 1999, appellant moved to suppress her statements to the officer as involuntarily given without proper Miranda
warnings. That same day, appellant also moved to suppress the evidence obtained during the search of her purse. Both motions were heard on March 5, 1999. By decision and entry filed March 19, 1999, the trial court denied both motions. The trial court found that any incriminating statements by appellant were made spontaneously and not in response to any questions from the officer. The trial court also found that the search of appellant's purse was properly made in the course of an inventory search in accordance with the Springboro Police Department written policy which specifically authorized the search of closed or locked packages. Following the denial of her motions to suppress, appellant entered a plea of no contest to the cocaine possession charge and was found guilty and sentenced accordingly. This appeal follows in which appellant raises the following two assignments of error:
Assignment of Error No. 1:
 BY DENYING THE MOTION TO SUPPRESS HER STATEMENT, THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS UNDER THE FOURTH AMENDMENT OF THE CONSTITUTION, BECAUSE THE STATEMENT WAS MADE AFTER THE ARREST AND IN RESPONSE TO THE EQUIVALENT OF INTERROGATION, AND APPELLANT WAS NEVER ADVISED OF HER MIRANDA WARNINGS.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED WHEN IT REFUSED TO SUPPRESS THE EVIDENCE BECAUSE THE STATE FAILED TO MEET ITS BURDEN OF PROVING THAT THE OFFICER HAD PROBABALE CAUSE TO BELIEVE THAT APPELLANT WAS DRIVING UNDER THE INFLUENCE.
An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by competent, credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586,592. When considering a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of the evidence. State v.Fanning (1982), 1 Ohio St.3d 19, 20. Relying on the trial court's factual findings, the appellate court determines "without deference to the trial court, whether the court has applied the appropriate legal standard." State v. Anderson (1995), 100 Ohio App.3d 688,691.
In her first assignment of error, appellant argues that her statements to the officer following her arrest and regarding the presence of the drugs in her purse should have been suppressed by the trial court because appellant was not given Miranda warnings. Appellant contends that she was then in custody and that her conversation with the officer was a custodial interrogation, or its functional equivalent, in violation of her Miranda rights.
An interrogation, as conceptualized in Miranda v. Arizona
(1966), 384 U.S. 436, 86 S.Ct. 1602, must reflect a measure of compulsion above and beyond that inherent in custody itself before it will be considered a "custodial interrogation." Rhode Islandv. Innis (1980), 446 U.S. 291, 300, 100 S.Ct. 1682, 1689; State v.Tucker (1998), 81 Ohio St.3d 431, 435. A custodial interrogation occurs when questioning is initiated by law enforcement officers.Innis, 446 U.S. at 298, 100 S.Ct. at 1688. The duty to advise a suspect of his constitutional rights arises only when questioning by law enforcement officers rises to the level of a custodial interrogation. State v. Gumm (1995), 73 Ohio St.3d 413, 429, certiorari denied (1996), 516 U.S. 1177, 116 S.Ct. 1275.
The requirements of Miranda do not affect the admission of volunteered statements made without police coercion or inducement.Tucker, 81 Ohio St.3d at 435. A defendant's voluntary, unprovoked statements to police while riding in a cruiser en route to jail do not fall within the protections of Miranda, even though the defendant has been placed under arrest. State v. Williams (June 1, 1993), Butler App. No. CA92-07-133, unreported, at 4.
In the case at bar, we agree that appellant was under arrest and in custody when she made the incriminating statements regarding the presence of the drugs in her purse to the officer. However, we find that such statements were not the product of police interrogation as they were not prompted or elicited by the officer in any way. The record shows that the officer did not attempt to interrogate appellant and refused to answer her questions while en route to the police station. Thus, appellant's statements were unprovoked and were voluntarily and spontaneously made without any coercion or inducement by the officer.
We are mindful that according to appellant, the officer, upon returning to his cruiser with the purse, asked appellant if it was her purse. Appellant argues that the officer's act of bringing the purse into the cruiser and their subsequent conversation, which appellant describes as a "cat and mouse game," constituted the functional equivalent of an interrogation. We disagree.
Although appellant's initial comments were made in response to a question from the officer as to the ownership of the purse, the officer did not exert any pressure on appellant to answer. "The concept of `interrogation' reflects some measure of compulsion in questioning or in actions. * * * Merely asking a preliminary question as to whether [the purse found pursuant to the inventory of appellant's car belonged to appellant] does not rise to the level of coercive interrogation designed to elicit Miranda protections." State v. Perry (Oct. 9, 1996), 1996 Ohio App. LEXIS 4430, at *8-9, Summit App. No. 17754, unreported. Nor does the officer's refusal to answer appellant's questions while en route to the police station.
We therefore find that the trial court properly denied appellant's motion to suppress her statements to the officer. Appellant's statements were voluntary and unprovoked, and as such need not be suppressed. Appellant's first assignment of error is overruled.
In her second assignment of error, appellant argues that the officer did not have probable cause to arrest her. Appellant contends that as a result, the evidence obtained from the inventory of her car should have been suppressed.
The Supreme Court of Ohio has clearly held that "where an officer has an articulable reasonable suspicion * * * to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid[.]" Dayton v.Erickson (1996), 76 Ohio St.3d 3, 11-12. In the case at bar, the officer stopped appellant after he observed her weaving repeatedly on State Route 741 and Pennyroyal Road, and traveling in the opposite lane of travel, after she twice turned right onto a road, before recovering back into her own lane. On the authority ofErickson, the officer clearly had an articulable reasonable basis to initiate a traffic stop based upon appellant's traffic violations which occurred in the officer's presence.
Upon approaching appellant's vehicle, the officer detected a strong odor of alcohol about appellant's person. Appellant admitted she had been drinking. We find that the foregoing, along with the officer's observation of appellant's traffic violations, provided the officer with reasonable suspicion to investigate further by conducting field sobriety tests. See State v. DeCamp
(Apr. 12, 1999), Warren App. No. CA98-05-060, unreported. Police do not need probable cause to conduct field sobriety tests.Columbus v. Anderson (1991), 74 Ohio App.3d 768, 770. Reasonable suspicion of criminal activity is all that is needed to support further investigation. State v. Bobo (1988), 37 Ohio St.3d 177,178, certiorari denied (1988), 488 U.S. 910, 109 S.Ct. 264. Upon review of the record, we find that the officer's conduct in requesting appellant to perform field sobriety tests was proper.
The officer administered four field sobriety tests. Appellant performed poorly on all four tests. Probable cause for an arrest exists where, at the moment of the arrest, the facts and circumstances within the officer's knowledge and of which the officer had reasonably trustworthy information were sufficient to warrant a prudent man to believe that the accused had committed the offense. Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223,225. The odor of alcohol about appellant's person, her admission she had been drinking, her poor performance on the field sobriety tests, the officer's observation of appellant driving on the wrong side of the road on two occasions, and appellant's weaving provided the officer with sufficient probable cause to arrest appellant for driving under the influence. See Wilmington v.Carter (Jan. 18, 2000), Clinton App. Nos. CA99-07-017 and CA99-07-018, unreported.
Accordingly, as none of appellant's rights were violated by the initial traffic stop, the subsequent investigatory detention, and the resulting arrest, the trial court properly denied appellant's motion to suppress the evidence obtained from the inventory of appellant's car. Appellant's second assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] The Springboro Police Department written policy provides that "[i]n order to prevent accusations of theft and to protect the property, anytime the Springboro Division of Police assumes responsibility for a vehicle, the vehicle will be completely inventoried to include closed and/or locked packages and areas whenever possible. * * * The inventory will be conducted at the scene unless circumstances dictate that the inventory be conducted at the police department or the city garage."