OPINION
Defendant-appellant, Andrew D. Szymanski, appeals his conviction in the Warren County Court of Common Pleas for conveying a deadly weapon on school property. For the reasons that follow, we affirm the trial court's judgment.
Appellant was indicted on a violation of R.C. 2923.122(A), illegal conveyance or possession of a deadly weapon or dangerous ordnance on school premises. Appellant filed a motion to suppress contraband found from a search of his car while it was on school grounds, arguing that the search was made without probable cause or reasonable suspicion. The trial court held a hearing on the motion to suppress, which revealed the following:
Robin Tatum was a special education teacher at Lebanon High School during 1998 and 1999. Appellant was one of her students, and she noticed that he had written inappropriate responses on papers for class. On one questionnaire given early in the school year, appellant wrote that "his goal in life was to kill people" and "the activities that he enjoyed were killing people." On his twelfth grade proficiency test, which was administered in October, appellant wrote that the people who had written the test should be shot. Tatum told the school's counselor and the school's principal, Sam Ison, about these writings.
During a class discussion held later in the school year, one of Tatum's students mentioned that appellant had fired guns from a bathroom window. When Tatum inquired further, several students said that appellant fired guns from his bathroom window and that he carried guns in his car. Tatum informed Principal Ison, the assistant principal, Cheryl Thompson, and the school's counselor about what she had heard.
At the time that Thompson received information that appellant may be transporting guns in his car, appellant was not attending school because he had been suspended for an unrelated incident. Appellant had already been suspended several times during the school year. Thompson called the Lebanon Police Department to inform them of the allegations against appellant.
During an impromptu meeting regarding appellant, several teachers and administrators discussed appellant's disconcerting behavior. Among those present at this meeting were Pam Bullock, the special education coordinator, the school psychologist, the school counselor, and Thompson. Thompson discussed an incident where appellant wore a bathrobe and slippers to school one day. The school counselor shared an incident where appellant drove his car in the homecoming parade and yelled at the soccer players. They also discussed how appellant had written inappropriate answers advocating violence on a class questionnaire and on his twelfth grade proficiency exam.
On February 17, 1999, Thompson saw appellant in the hallway of the high school. This was the first time she had seen appellant since hearing allegations that he was transporting guns in his car. Appellant was still under suspension from school, and although he had been given permission to return to see the school psychologist, he had missed that appointment. Thompson had no knowledge of any appointment scheduled for appellant on this day. Thompson consulted with Principal Ison and her other superiors about how she should proceed. Thompson was instructed to call the police to request the presence of a law enforcement official to observe a search of appellant's car.
Thompson asked appellant to come into her office. Thompson asked appellant whether he was carrying guns in his car. Appellant denied that he was doing any such thing. Thompson told him that considering the circumstances, she needed to search his car. Appellant replied, "This is ridiculous," and walked out of the office. Thompson and David Brausch, the school's athletic director, followed appellant to his car, which was parked in the driveway in front of the school.
When they arrived at appellant's car, Officer Steve Herrick was there in uniform. There is a conflict in the testimony as to what happened next.
According to the testimony of Thompson, Brausch, and Officer Herrick, the following events occurred: Officer Herrick explained that he was only an observer to the search and that he was not actually conducting the search, because the school was in charge. Thompson asked appellant to open his car and appellant unlocked and opened the trunk. A pistol was lying on the top of some clothes in the trunk. At that point, Officer Herrick asked everyone to stand back, and he took possession of the pistol. Officer Herrick asked appellant if there were any other weapons, and appellant answered, "yes." The end of a rifle was visible. Officer Herrick picked up the rifle. Thompson searched the trunk and then searched the rest of the car but did not find any other contraband. According to this testimony, Officer Herrick did not search the car. Officer Herrick did not arrest appellant at that time.
Officer Herrick testified that he recalled appellant saying that he really did not want to open the trunk of his car as he was unlocking it. Officer Herrick also testified that he took possession of the weapons as a safety precaution. He testified, "[D]uring my training I've always been taught in a situation like that to take possession of those weapons in the event that if [appellant] was upset about something then he couldn't grab it and discharge it."
Appellant's testimony about the search of his car included the following: Officer Herrick said that he was present as an observer and that the school was going to search his car. Appellant testified that he asked whether there was a search warrant and said that he did not want to open his trunk. Appellant testified that Officer Herrick instructed him to open his car. According to appellant, the search of his trunk "was mostly [conducted by] Officer Herrick." Appellant testified that Officer Herrick took possession of the guns once the trunk was opened and "also searched the trunk for anything else." Appellant testified that Thompson conducted the search of the passenger area of the vehicle.
The trial court found that the weapons removed from appellant's car were not unlawfully seized and overruled the motion to suppress. Appellant pled no contest to the charge against him and was sentenced to three years of community control. Appellant then filed this appeal, raising one assignment of error for our review:
 THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS THE WEAPONS SEIZED FROM HIS VEHICLE.
In his assignment of error, appellant argues that the trial court erred by overruling his motion to suppress. Appellant insists that the trial court incorrectly determined that the search was reasonable under the circumstances.
When considering a motion to suppress, the trial court is the primary judge of the credibility of witnesses and the weight of the evidence.State v. Fanning (1982), 1 Ohio St.3d 19, 20. If the trial court's findings are supported by competent and credible evidence, then the appellate court must accept them. State v. Williams (1993),86 Ohio App.3d 37, 41. Relying on the trial court's factual findings, the reviewing appellate court determines "without deference to the trial court, whether the court has applied the appropriate legal standard."State v. Anderson (1995), 100 Ohio App.3d 688, 691.
In New Jersey v. T.L.O. (1985), 469 U.S. 325, 105 S.Ct. 733, the United States Supreme Court established the legal standard to apply when public school officials search students or their property. The court determined that legality of such searches depends upon "the reasonableness, under all the circumstances, of the search." Id. at 341, 105 S.Ct. 742. Determining the reasonableness of a search requires a two-step inquiry: first, one must ask "whether the * * * action was justified at its inception" and second, one must ask whether the search as conducted "was reasonably related in scope to the circumstance which justified the interference in the first place." Id. at 341, 105 S.Ct. 742-43. The court stated that adhering to this standard
 will spare teachers and school administrators the necessity of schooling themselves in the niceties of probable cause and permit them to regulate their conduct according to the dictates of reason and common sense. At the same time, the reasonableness standard should ensure that the interests of students will be invaded no more than is necessary to achieve the legitimate end of preserving order in the schools.
Id. at 343, 105 S.Ct. 743.
When ruling on the motion to suppress, the trial court made the factual finding that Officer Herrick was an observer to the search of appellant's car and did not conduct the search. There is competent, credible evidence to support this finding. The testimony of Thompson, Brausch, and Officer Herrick was that the officer did not participate in the search of appellant's car except to remove the guns, which were easily visible. Although appellant testified that Officer Herrick told him to open his trunk and conducted the search of the trunk, the trial court chose to disbelieve that testimony. There is support for the trial court's factual finding that Thompson conducted the search.
Because a school administrator performed the search of this student's property, we apply the standard established in T.L.O. We first consider first whether the search of appellant's car was justified at its inception. Ordinarily, a search of a student by a school official will be justified at its inception when "there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school."T.L.O., 469 U.S. at 341-42, 105 S.Ct. at 743. At the hearing on the motion to suppress, there was testimony that it is against school policy to have weapons on school property and that where there is suspicion that a student may have weapons, school policy requires a search.
When overruling the motion to suppress, the trial court found that the search was justified at its inception, stating:
 Prior to the inception of the search there are a series of red flags that indicate potential concern regarding Defendant in this case: He was under suspension at the time he appeared at the high school on the day in question; this was an unscheduled appearance; there was information that the Defendant had * * * weapons in his car * * *; and just a series of red flags, including two writings and other what could be called unorthodox or bizarre behaviors that might indicate when the word firearms comes up that now is the time to take some action and that would be reasonable under the circumstances regarding protection of the school and the individuals within the school.
Appellant argues that when ruling that the search was justified, the trial court inappropriately considered factors that were not known to Thompson at the time that she searched the car. Appellant asserts that Thompson was the only witness to testify about why the school felt it was reasonable to search the vehicle, and the only reason that she gave was that she had learned from Tatum that appellant may be transporting guns in his car. Appellant insists that because Thompson never mentions any other reason to search the car, that we can consider no other reason. Appellant also complains that the search was unreasonable because the assertion that he was carrying guns in his car was based upon hearsay information from unidentified students.
Although not mentioned by Thompson in her testimony, Bullock testified that Thompson was present at the impromptu meeting that specifically discussed several significant concerns about appellant's behavior, including appellant's writings about guns and violence. Even if, as appellant claims, Thompson was not aware about appellant's inappropriate writings, this does not mean that she lacked justification to search his car.
First, we do not feel that the reason for conducting the search must be completely provided by Thompson. She was a school official, acting on behalf of the school in a collective effort to deal with a potentially dangerous situation. When Tatum heard allegations that appellant was carrying guns in his car, she did not immediately act on this information herself but related what she had heard to Principal Ison, Thompson, and the school counselor. Thompson decided how to proceed only with the guidance of Principal Ison and her other superiors.
Second, even if we were to review only the evidence that was indisputably before Thompson, we would find that her search of appellant's car was warranted. Considering that appellant already had some significant disciplinary problems at the school, it seems entirely appropriate that the school administrators gave these allegations serious consideration. The search was conducted on the first day that appellant returned to school after school administrators had learned that he may be carrying guns in his car. Where appellant made an unscheduled appearance at school while under suspension, appellant had a significant history of disciplinary problems, and there were student allegations that appellant was carrying guns in his car, we find that the decision to search was justified. Under these circumstances, the search was reasonable at its inception.
Following the two-part test of T.L.O., we also consider whether the search that was conducted was reasonably related in scope to the circumstances that allowed the interference in appellant's privacy in the first place. We find that it was. The allegations were that appellant was carrying guns in his car, and only appellant's car was searched.
We hold that in light of the attendant circumstances, the search of appellant's car by a school official was reasonable. A school must act when necessary to protect the safety and well being of its students from potential outbreaks of violence. We find that the trial court's decision to overrule appellant's motion to suppress was appropriate. The assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.