OPINION
{¶ 1} Appellant, Timothy P. Brunkala, appeals the August 23, 2002 judgment entry of the Willoughby Municipal Court, in which he was convicted of and sentenced for driving under the influence of alcohol.
 {¶ 2} Appellant was issued a citation on May 25, 2002, for driving under the influence of alcohol, in violation of R.C. 4511.19(A)(1), a misdemeanor of the first degree, and driving outside of marked lanes of travel, in violation of Kirtland Hills Codified Ordinance No. 331.08(A). Appellant initially entered a plea of not guilty to the charges. On August 1, 2002, appellant filed a motion to suppress the evidence "pertaining to the traffic citation in this case involving the stop and field sobriety tests ***." A suppression hearing was held on August 7, 2002.
 {¶ 3} Patrolman Jeffrey R. Bilicic ("Patrolman Bilicic") of the village of Kirtland Hills Police Department testified that on May 25, 2002, at about 2 a.m., while he was on routine patrol, he observed appellant's auto, which was in front of him, traveling with its tires on the double yellow line. He continued to follow the vehicle and saw it cross the double yellow line again. The auto then went into the lane of travel and over the solid white edge line. Thereafter, Patrolman Bilicic observed appellant's car "*** completely in the northbound lane traveling southbound." As a result, he activated his overhead lights and initiated a traffic stop. He approached appellant and advised him of the reason for the stop.
 {¶ 4} Patrolman Bilicic related that he observed that appellant's eyes were bloodshot and glassy and that he had a very strong odor of alcohol emanating from his person. He asked appellant if he had been drinking, to which appellant replied that he had had two beers. Patrolman Bilicic asked appellant to exit the vehicle and perform some field sobriety tests, which appellant did not correctly accomplish. Specifically, Patrolman Bilicic administered the horizontal gaze nystagmus test, the nine step walk and turn test, the one leg stand test, and the finger to nose test. Patrolman Bilicic testified that the tests were carried out in accordance with the National Highway and Transportation Safety Administration ("NHTSA").
 {¶ 5} Patrolman Bilicic determined that appellant failed the tests. According to Patrolman Bilicic, in reference to the horizontal nystagmus, "there was a nystagmus at maximum deviation." With respect to the nine step walk and turn test, which appellant failed, Patrolman Bilicic observed appellant "raise his arms even with his shoulders while he was walking and [Patrolman Bilicic] informed him at the beginning of the test that he needed to keep them down at his sides. [Patrolman Bilicic] noticed he raised his arms even with his shoulders." Appellant had to take his foot and step off and put it on the side several times. Patrolman Bilicic also revealed that appellant stepped off the line four to five times. Furthermore, he indicated that appellant did not perform the one leg stand test satisfactorily. According to Patrolman Bilicic, appellant "*** came out even with his shoulders. He placed his foot down six times during the test and he stopped every time he put the foot down as if it was the end of the test. *** He repeated several numbers ***." Based on appellant's performance of the one leg stand test, Patrolman Bilicic determined that appellant was impaired. Patrolman Bilicic then had appellant perform the finger to nose test. After that test, Patrolman Bilicic observed that appellant was impaired because he was not able to touch the tip of his nose with his finger, and he was swaying back and forth. Subsequently, Patrolman Bilicic placed appellant under arrest for driving under the influence of alcohol.
 {¶ 6} In a judgment entry dated August 15, 2002, the trial court granted appellant's motion to suppress as to the walk and turn test and denied it in all other respects. On August 23, 2002, appellant withdrew his plea of not guilty and entered a plea of no contest to the charges. The trial court found appellant guilty of driving under the influence of alcohol, and the other charge was dismissed. Appellant was sentenced to one hundred and eighty days in jail, one hundred sixty-five days of which were suspended. The trial court also fined appellant $500, ordered him to pay costs, suspended his driver's license, and required probation for one year with conditions. Appellant timely filed the instant appeal and now assigns a single assignment of error:
 {¶ 7} "The trial court committed error when it denied the motion to suppress involving the admissibility of field sobriety tests not administered in strict compliance with the [NHTSA] standardized testing procedures."
 {¶ 8} For his sole assignment of error, appellant argues that the trial court erred in denying his motion to suppress because the horizontal gaze nystagmus test, the one leg stand test and the finger to nose test were not properly administered.
 {¶ 9} At a suppression hearing, the trial court, acting in its role as the trier of fact, is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Mills
(1992), 62 Ohio St.3d 357, 366. A trial court's decision regarding a motion to suppress will not be reversed if it is supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594;State v. Frazier (Oct. 6, 2000), 11th Dist. No. 99-T-0109, 2000 WL 1488364, at 2. When reviewing a trial court's decision on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. An appellate court must defer to "the trial court's findings of fact and rely on its ability to evaluate the credibility of the witnesses," and then must independently review whether the trial court applied the correct legal standard. State v. Anderson (1995), 100 Ohio App.3d 688, 691.
 {¶ 10} In State v. Homan (2000), 89 Ohio St.3d 421, 425, the Supreme Court of Ohio explained that "while field sobriety tests are a potentially effective means of identifying intoxicated drivers, these tests' reliability depends largely upon the care with which they are administered." The Court further stated that: "[i]n order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." Id. at paragraph one of the syllabus. The Court in Homan also concluded that, although the results of field sobriety tests had to be excluded, the totality of the circumstances supported the police officer's decision to arrest the appellant for driving under the influence of alcohol. Id. at 427.
 {¶ 11} Here, Patrolman Bilicic testified at trial that he administered the horizontal gaze nystagmus test and the one leg stand test to appellant in accordance with the NHTSA guidelines. Furthermore, he testified in detail as to the procedures he employed in administering each of the field sobriety tests. Hence, after thoroughly reviewing the record and transcript from the suppression hearing, it is our view that Patrolman Bilicic was in strict compliance with the NHTSA guidelines as to the horizontal gaze nystagmus test and the one leg stand test.
 {¶ 12} However, even if some error had occurred in the transmission of the tests by Patrolman Bilicic, and they were not administered in strict compliance with the NHTSA guidelines, any such error was harmless. A reviewing court may overlook an error where the admissible evidence comprises "overwhelming" proof of a defendant's guilt. State v. Williams (1983), 6 Ohio St.3d 281, 290. "Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." State v. Brown (1992), 65 Ohio St.3d 483, 485. Furthermore, the Supreme Court in Homan, 89 Ohio St.3d at 427, stated:
 {¶ 13} "While field sobriety tests must be administered in strict compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where *** the test results must be excluded for lack of strict compliance."
 {¶ 14} In the case at bar, Patrolman Bilicic testified that at approximately 2:00 a.m., after he observed appellant's vehicle travel over the yellow and white lines and proceed southbound in the northbound lane of travel, he activated his overhead lights to stop appellant. Patrolman Bilicic testified that when he approached appellant, he observed that appellant's eyes were glassy and bloodshot and a strong odor of alcohol was emanating from him. The officer testified that he asked appellant if he had anything to drink, to which appellant admitted that he had had two beers. Patrolman Bilicic had appellant perform the finger to nose test, which is a non-NHSTA test, and he observed that appellant was impaired because he was not able to touch the tip of his nose with his finger. Further, Patrolman Bilicic stated that appellant was swaying back and forth.
 {¶ 15} In light of the overwhelming evidence that appellant was under the influence of alcohol, it is our conclusion that any error in the trial court's failure to suppress evidence of appellant's performance on the horizontal nystagmus gaze test and the one leg stand tests was harmless.
 {¶ 16} For the foregoing reasons, appellant's lone assignment of error is not well taken. The judgment of the Willoughby Municipal Court is affirmed.
Judgment affirmed.
William M. O'Neill and Cynthia Westcott Rice, JJ., concur.