OPINION *Page 2 
{¶ 1} The defendant-appellant, Ryan E. Childers ("Childers"), appeals the Judgment of conviction and sentence entered in the Common Pleas Court of Logan County, Ohio and filed on August 23, 2006.
 {¶ 2} On October 12, 2005, the Logan County Grand Jury indicted Childers for Count I — Aggravated Murder, a violation of R.C. 2903.01(A); Count II — Abuse of a Corpse, a violation of R.C. 2927.01(B), a felony of the fifth degree; and Count III — Tampering with Evidence, a violation of R.C. 2921.12(A)(1), a felony of the third degree. On April 21, 2006, Childers filed a motion to suppress asserting that he had invoked his right to counsel prior to his interrogation and that the officers had subsequently misadvised him concerning the waiver of his constitutional rights. On May 10, 2006, the trial court conducted an evidentiary hearing. On May 18, 2006, the trial court overruled the motion.
 {¶ 3} On August 7, 2006, Childers pled no contest to the amended count of aggravated murder and the trial court dismissed Counts II and III, respectively abuse of a corpse and tampering with evidence. On August 21, 2005, the trial court sentenced Childers to an indefinite term of imprisonment of fifteen years to life.
 {¶ 4} On September 21, 2006, Childers filed a notice of appeal raising the following assignment of error: *Page 3 
 THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS
 {¶ 5} Childers asserts that the trial court erred when it denied his motion to suppress. Specifically, he alleges that he instructed his girlfriend, Ciera Nicol, in the presence of Detective Sebring, and prior to any questioning of him, to obtain an attorney for him.
 {¶ 6} Appellate review of a decision on a motion to suppress evidence presents a mixed question of law and fact. United States v.Martinez (C.A. 11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact and is in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Carter (1995), 72 Ohio St.3d 545, 552,651 N.E.2d 965. When reviewing a trial court's decision on a motion to suppress, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. State v. Dunlap (1995),73 Ohio St.3d 308, 314, 652 N.E.2d 988. We must defer to "the trial court's findings of fact and rely on its ability to evaluate the credibility of the witnesses," and then independently review whether the trial court applied the correct legal standard. State v. Anderson
(1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034.
 {¶ 7} The accused must unequivocally request an attorney in order to invoke their right to an attorney. Davis v. United States, 512 U.S. 452,462, 114 S.Ct. 2350, 129 L.Ed.2d 362. "If the statement is ambiguous or equivocal in that a *Page 4 
reasonable police officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, the cessation of questioning is not required." State v. Hennes (1997),79 Ohio St.3d 53, 63, 679 N.E.2d 686 citing Davis, 512 U.S. 452, 459.
 {¶ 8} In this case, the following statements were made pursuant to the pre-interrogation warning and advice of rights waiver form on September 28, 2005 prior to the questioning and statement made by Childers:
 Detective Sebring: Ryan Childers, Junior. Okay. Well, Ryan, like I explained to you, I want to talk to you about the incident that happened down here on West Sandusky Street.
 Mr. Childers: Okay.
 Detective Sebring: Before I talk to you about that, I do want to read you your rights first, okay?
 Before you answer any questions, you're entitled to be informed of the following rights. You have a right to remain silent. Anything you say can and will be used against you in court or courts of law. You have a right to advice from a lawyer before making any statements or answering any questions and have them present with you during any statements or answering any questions.
 If you cannot afford to hire a lawyer, one will be appointed for you before making any statements or answering questions if you desire. If you decide to make statements or answer questions now without a lawyer present, you'll still have the right to stop making statements or answering any questions at any time until you talk to a lawyer. Do you understand those rights?
 Mr. Childers: Yes, I do. *Page 5 
 Detective Sebring: Okay. It's about 10:10. And if you want to read over that right there, that's the Miranda that I just read to you.
 Mr. Childers: You just read it to me.
 Detective Sebring: Yeah. Yeah. It's not admitting to anything, it's just saying — I just need you to sign here, and that's just saying I read you your rights and that you understood them.
 Mr. Childers: Okay. So which one will I sign, then?
 Detective Sebring: You know, right here's fine. That's fine. Okay. * * * Can you read?
 Mr. Childers: Definitely.
 Detective Sebring: Okay. This next part down here is just saying that you're willing to talk to me today, and, you know, like I said, you've talked to me on the phone and you've already told me you want to talk to me. That's all that says, so if you're willing to talk to me, just go ahead and sign right there and we'll talk.
 Mr. Childers: So if I want to talk, sign this?
 Detective Sebring: Yeah. Sign right there for me. Okay. * * *
September 28, 2005 Trans. of Taped Interview, p. 2-4.
 {¶ 9} During the May 10, 2006 Suppression Hearing, the trial court heard testimony of two law enforcement officers and Ciera Nicol regarding the suppression of the statement made by Childers on September 28, 2005. Ciera Nicol asserted the following:
 Q: Now, when you arrived at the police department, what happened? *Page 6 
 A: We pulled up to the garage, and Detective Sebring and the police officer got out of the car and got Ryan out. And he was still handcuffed. And then I got out and walked around to the other side of the car to Ryan, and Ryan asked me if I thought that he should have an attorney. And I said, well, yes, you're definitely going to need an attorney. Well, you better get one up here for me. And I looked at Detective Sebring and asked how do I go about getting him an attorney. He said there was time for that later, that he hasn't been charged yet.
 Q: Who all was — so who was present during the conversation were the same four persons that took the ride?
 A: Yes.
 Q: Do you know whether the other officer besides Sebring was within earshot for that entire conversation or not?
 A: Yes, he was.
 Q: All right. Did he participate in it in any way?
 A: No.
 Q: And — and then what happened after that?
 A: They took — they started guiding Ryan toward the door and told me to wait into the lobby and that I could see Ryan afterwards.
 Q: Was there — this conversation you've testified about regarding an attorney there, is there any doubt in your mind that it happened at that point as opposed to happening after the interrogation?
 A: It happened at that point, yes.
 Q: And that was before Ryan went in and was questioned?
 A: Yes.
May 10, 2006 Trans. Suppression Hearing, p. 47-48. The following statements were made by Detective Sebring at the May 10, 2006 Suppression Hearing:
 Q: There was a period of time — you say you arrived at approximately — between 8:30 and 9:00?
 A: Yes.
 Q: And the time that the audiotape began, according to what you said on it was 10:10 AM, am I right about that? *Page 7 
 A: That's correct.
 Q: So what was happening between either 8:30 or 9:00 and 10:10 AM?
 A: Waiting on Officer Kenner's arrival from home.
 Q: And is it true that Ciera remained at the police department while this was happening?
 A: Yes. Outside in the lobby.
 Q: Was there some conversation that took place either in the lobby or some other area in the vicinity of the police department between Ciera and Ryan during which you were present?
 A: Not before the interview, no.
 Q: Do you not recall a conversation between Ciera and Ryan during which the discussion of a need to secure legal counsel for him was had?
 A: No, that did not happen.
May 10, 2006 Trans. Suppression Hearing, p. 24-25. Furthermore, Officer Randy Knox stated the following at the May 10, 2006 Suppression Hearing:
 Q: Once the car pulls into the parking lot at the police department and you're getting out, do you recall any conversation about Mr. Childer's desire for or need for a lawyer?
 * * *
 A: No, I do not.
 Q: Officer Knox, at any time do you recall hearing Ciera Nicol and the defendant discuss the need for lawyers?
 * * *
 A: I don't recall any conversation about an attorney.
 {¶ 10} Upon review of the record and the May 10, 2006 Suppression Hearing, we find that the trial court did not err when it denied Childers' motion to suppress. The trial court is in the best position to resolve the factual questions and to evaluate the credibility of the witnesses. Carter, supra. In this case, the *Page 8 
trial court's findings of fact are supported by competent, credible evidence and upon independent review the trial court did apply the correct legal standard.
 {¶ 11} Therefore, based on the foregoing, we find that Childers' sole assignment of error is overruled and the Judgment of conviction and sentence entered in the Common Pleas Court of Logan County, Ohio and filed on August 23, 2006, is affirmed.
Judgment affirmed.
 ROGERS, P.J., and PRESTON, J., concur. *Page 1