[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Appellant, Vonzell O. Williamson, appeals the March 19, 2001 judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, approving and adopting the December 26, 2000 decision of the magistrate, and overruling appellant's objections to the magistrate's decision. For the reasons that follow, we reverse.
On December 26, 2000, appellant's adjudicatory hearing on the offense of possession of crack cocaine was held before a magistrate.[1]
Columbus Police Officers Jeremy Ehrenborg and Todd Waugh testified on behalf of the state. The following facts are from their sworn testimony.
On December 6, 2000, Officer Ehrenborg observed appellant and Todd Williams ("Williams") standing on the corner of Barthman Avenue and South Fourth Street at about 10:00 p.m. Officer Ehrenborg described the area as a busy corner, stating that it was known for high drug trafficking and prostitution, and that he has made prior arrests on that corner for possession of crack. (Tr. 8, 20.)
Officer Ehrenborg testified that he drove up and stopped the paddy wagon at the corner where appellant and Williams were because it was out of the ordinary for two males to be standing on the corner of Barthman and Fourth while it was cold and snowing outside, and no one else was around. (Tr. 7.) Officer Ehrenborg stated that he observed appellant and Williams walk away, but then they turned back around and came back to where the paddy wagon was stopped. (Tr. 8.) Officer Ehrenborg testified that he recognized both appellant and Williams from prior arrests.[2]
(Tr. 9.) Officer Ehrenborg never requested appellant or Williams to turn back around and walk towards the paddy wagon. When asked if he knew what appellant and Williams were doing when they walked away and then turned back around, Officer Ehrenborg replied that, although he did not know what they were doing, he believed appellant and Williams were engaging in drug trafficking. (Tr. 10, 20.) Officer Ehrenborg further testified that although he did question appellant and Williams about what they were doing standing on the corner, he could not remember what reply they gave him. (Tr. 10.) Officer Ehrenborg further stated that he observed Demeki Walker ("Walker"), who was previously standing at a payphone, walk towards where he was, and stopped about twenty-five feet away. (Tr. 10.)[3] Officer Ehrenborg stated that he walked up to Walker to see what she was doing. (Tr. 10.) Officer Ehrenborg asked Officer Waugh to run warrant checks on all three individuals. Officer Waugh testified that none of the individuals had warrants. (Tr. 33.)
Officer Ehrenborg further testified that he was standing about five feet from appellant when he observed appellant's mouth "opened a little bit and I saw something white kind of like look like he was moving something around in his mouth." (Tr. 11.) Officer Ehrenborg testified that when he asked appellant what was in his mouth, appellant "tilted his head back and went, `nothin [sic].'" (Tr. 12.) Officer Ehrenborg additionally testified that he believed that appellant had drugs in his mouth. (Tr. 12.) Officer Ehrenborg stated:
 A. * * * I walked over to him, I said, "What's in your mouth?" And he started to like step back and I grabbed hold to the edge of his shirt right here or his jacket — a jacket, got hold to the edge of his jacket and he pulled his head back and stuck his head like inside the neck — the front neck area of his jacket.
* * *
 A. He took his other hand and grab hold like the base like around the bottom of his jacket and I said, "spit it out." And he just kept his head down like this, then he finally pulled his head back up and said, "I ain't got nothing — I ain't got nothing." [Tr. 12.]
Officer Ehrenborg testified that he told appellant to spit out whatever was in his mouth, because if the substance was crack and if appellant had swallowed it, he would have died. (Tr. 12-13.) Officer Ehrenborg then shook appellant's jacket and a bag, of what appeared to be crack, fell out from the bottom of appellant's jacket.
Officer Waugh was standing close by and observed what was taking place. He testified that he observed appellant put his mouth and part of his nose down into his shirt and, as appellant attempted to pull away, "my partner had hold of his shirt and as he was leaning back, my partner had hold of his shirt and I noticed it a baggy of what was field tested positive at the time of the suspect crack cocaine fell on to the sidewalk." (Tr. 36.)
Officer Ehrenborg testified that he tested the crack using a portable field tester. (Tr. 15.) When the results from the test came back positive for cocaine, Officers Ehrenborg and Waugh arrested appellant and charged him with possession of crack. (Tr. 15.)
On January 19, 2001, the magistrate overruled appellant's motion to suppress evidence and determined beyond a reasonable doubt that appellant was guilty of possession of crack cocaine, in violation of R.C. 2925.11(A). Specifically, the magistrate determined that given the exigency and totality of the circumstances, the activities of Officers Ehrenborg and Waugh were reasonable and justified under the stop and frisk doctrine. On February 2, 2001, appellant filed an objection to the magistrate's decision. On March 16, 2001, the state filed a memorandum contra to appellant's objection. On March 19, 2001, the trial court approved and adopted the magistrate's decision, and ordered appellant's objections to the magistrate's decision overruled. It is from this entry that appellant appeals, raising the following sole assignment of error:
ASSIGNMENT OF ERROR
 THE JUVENILE MAGISTRATE ERRED WHEN HE OVERRULED THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF AN UNLAWFUL SEIZURE OF THE DEFENDANT. THE JUVENILE COURT JUDGE ALSO ERRED WHEN SHE MADE ERRONEOUS FINDINGS OF FACT AND CONCLUSIONS OF LAW WHEN RULING ON THE OBJECTION TO THE MAGISTRATE'S FINDINGS.
Issues Presented:
 Was the appellant detained for Fourth Amendment purposes when he was stopped on the street for interrogation and a warrant check by police officers?
 Does the observation of "something" white in a person's mouth provide probable cause to seize the person and search him?
In his sole assignment of error, appellant contends that the magistrate erred in overruling his motion to suppress evidence obtained as a result of the unlawful seizure of appellant and that the trial court also erred in approving and adopting the magistrate's decision to overrule appellant's motion to suppress. Appellant argues that the state failed to prove that the seizure of appellant, at the time the officers stopped him for questioning and conducted the warrant check, did not violate appellant's Fourth Amendment rights. Appellant additionally argues that the observation of a "substance" in appellant's mouth did not constitute probable cause to arrest and seize appellant. As such, appellant contends that the motion to suppress the illegally obtained evidence should have been granted.
The appellate standard of review of a trial court's decision on a motion to suppress is de novo. State v. Anderson (1995),100 Ohio App.3d 688, 691. However, our review of the facts looks at whether the trial court's ruling was supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594; Ornelas v. United States (1996), 517 U.S. 690, 699 (although on appeal the standard of review on determinations of reasonable suspicion and probable cause is de novo, the reviewing court should review the trial court's factual findings only for clear error, giving due weight to the trial court as to the inferences drawn from those facts). While this court is "bound to accept the trial court's findings of fact which are supported by competent, credible evidence, we must independently determine as a matter of law, without deference to the trial court's conclusions, whether the findings of fact satisfy the appropriate legal standard." State v. Goins (Oct. 22, 1998), Franklin App. No. 98AP-266, unreported; State v. Klein (1991), 73 Ohio App.3d 486.
The propriety of the officers conduct in this case is dependent upon whether the stop and seizure of appellant satisfied the principles outlined in Terry v. Ohio (1968), 392 U.S. 1. It is well established that the Fourth Amendment is designed to protect personal privacy and property rights against unreasonable searches and seizures by the state. The Fourth Amendment also protects "seizures that involve only a brief detention short of traditional arrest." United States v. Brignoni-Ponce (1975), 422 U.S. 873, 878; Davis v. Mississippi (1969), 394 U.S. 721; United States v. Mendenhall (1980), 446 U.S. 544, 551; Terry, at 16-19.
A seizure occurs under the Fourth Amendment "whenever a police officer accosts an individual and restrains his freedom to walk away." Terry, at 16. However, "not all personal intercourse between policemen and citizens involves `seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a `seizure' has occurred." Mendenhall, at 552, quoting Terry, at 19, fn. 16. "There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." Id. at 34. (Justice White, concurring.) Provided that the individual to whom the police officer is questioning remains free not to answer the officer's questions and simply walk away, that individual's Fourth Amendment rights have not been infringed upon. Mendenhall, supra. Therefore, "a person has been `seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Id. at 554. The Mendenhall court noted that "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled" are examples of circumstances that may lead an individual to believe he was being seized. Id. citing Terry, at 19, fn. 16; Dunaway v. New York (1979),442 U.S. 200, 207, fn. 6.
Where a police officer has a reasonable and articulable suspicion of criminal activity, the officer may make a brief, investigative stop. Terry, supra. "Reasonable suspicion" is a term of art that is not "`readily, or even usefully, reduced to a neat set of legal rules.'" United States v. Sokolow (1989), 490 U.S. 1, 7, quoting Illinois v. Gates (1983), 462 U.S. 213, 232. The term connotes something less than probable cause, but something more than an "inchoate and unparticularized suspicion or `hunch.'" Terry, at 27; see, generally, State v. Ramey (1998), 129 Ohio App.3d 409.
To justify a stop under Terry, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. The Ohio Supreme Court has clarified the specific and articulable standard in State v. Freeman (1980), 64 Ohio St.2d 291. The court concluded that "[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." Id. at paragraph one of the syllabus. The standard for reviewing such police conduct is an objective standard. Terry, at 21-22. When an officer is able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant an intrusion into a protected area, a law enforcement officer may make a brief investigatory stop of a suspect. State v. Adams (Sept. 15, 1989), Montgomery App. No. 11608, unreported. In that event, facts or tangible evidence gathered from the stop are not the products of an unreasonable search or seizure. Terry, supra. The determination of whether a particular stop was based on reasonable, articulable suspicion of criminal activity requires the state to produce evidence from which a court may independently review whether "the suspicion of criminal activity on which the officers acted was one that a reasonable and prudent officer would have formed." See State v. Pauley (Jan. 30, 1998), Montgomery App. No. 16231, unreported.
In this case, we must first determine if the initial personal encounter between the police officers and appellant constituted the seizure of appellant. There is no constitutional provision that prevented Officers Ehrenborg and Waugh from approaching appellant and questioning him. Terry, supra. The minimal intrusion of simple questioning of a person, not in custody, does not amount to a seizure requiring Fourth Amendment protection. Florida v. Royer (1983), 460 U.S. 491. Appellant was not requested to stop and approach the officers. Appellant voluntarily turned back around and walked towards the officers. At the time Officer Waugh conducted the warrant check of appellant, appellant was not seized. The officers did not restrain appellant's freedom or liberty to walk away. Terry, supra. Appellant remained free not to answer the officers questions and walk away. Mendenhall, supra. Appellant's initial encounter with Officers Ehrenborg and Waugh was a lawful, consensual encounter.
Seeing that the initial encounter between appellant and the officers did not amount to a seizure, we must next determine if the officers possessed a reasonable and articulable suspicion of criminal activity to stop appellant and probable cause to make the arrest. Our review of the facts indicate the following timeline of events:
 1. The officers observed appellant and Williams standing on the corner of Barthman Avenue and South Fourth Street at about 10:00 p.m.;
 2. The officers pulled the paddy wagon up to the corner and stopped;
 3. Appellant and Williams walked away from the corner, but then turned back around and headed towards the officers;
 4. Officer Ehrenborg exited the paddy wagon and asked appellant and Williams what they were doing standing out at the corner;
 5. Officer Waugh, at the request of Officer Ehrenborg, ran a warrant check on the individuals;
 6. Officer Ehrenborg saw a white substance in appellant's mouth and asked him what was in his mouth;
 7. Officer Ehrenborg grabbed a hold of the edge of appellant's jacket;
 8. Officer Ehrenborg told appellant to spit out the white substance in his mouth;
 9. Appellant told Officer Ehrenborg that he had nothing in his mouth;
 10. Officer Ehrenborg shook appellant's jacket and a bag of crack fell out from the bottom of appellant's jacket.
At the point Officer Ehrenborg observed a white substance in appellant's mouth, Officer Ehrenborg had reasonable and articulable suspicion of criminal activity to warrant a Terry stop and an investigation. Terry, supra. At this point, there was only a reasonable suspicion to detain appellant, not probable grounds for an arrest. However, instead of investigating further, Officer Ehrenborg seized appellant. Officer Ehrenborg's observations justified a Terry stop, but not the arrest of appellant. It is well established that an arrest must be based on probable cause. Beck v. Ohio (1964), 379 U.S. 89, 91. Probable cause is defined as "whether, at the moment the arrest was made, * * * the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." Id. Generally, probable cause exists when the police have "reasonably trustworthy information * * * sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Id.
In this case, the trial court stated that the seizure of appellant was lawful and justified due to exigent circumstances, i.e., the safety of appellant and to prevent the destruction of the evidence. This court previously held that "[t]he exigent circumstances justification for a warrantless search does not apply when there is no probable cause to arrest, and only suspicion that criminal activity has taken place or that the defendant may have possession of contraband. Exigent circumstances are not a valid exception to the Fourth Amendment rights of defendant under the circumstances." State v. Bowyer (Aug. 29, 2000), Franklin App. No. 00AP-58, unreported. Therefore, appellant's arrest was invalid. As such, appellant's sole assignment of error is well-taken and sustained.
Based on the foregoing, appellant's sole assignment of error is sustained and this case is remanded for further proceedings consistent with this opinion.
Judgment reversed and cause remanded for further proceedings.
BRYANT, P.J., and McCORMAC, J., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
[1] Both appellant and the state agreed to combine appellant's motion to suppress and trial into the adjudicatory hearing.
[2] Officer Ehrenborg testified that he charged appellant with "no OPS" and arrested Williams for possession of crack. (Tr. 9.)
[3] Officer Ehrenborg testified that he knew Walker because he had arrested her before. (Tr. 11.)