OPINION
{¶ 1} Defendant-appellant, Charles Carter, appeals the decisions of the Clinton County Court of Common Pleas denying his motion to suppress evidence, sentencing him for both kidnapping and rape, and adjudicating him a sexual predator. We affirm the trial court.
 {¶ 2} Appellant and K.S. were co-workers at Lowe's in Wilmington. Appellant wanted a romantic relationship with K.S. However, K.S. declined appellant's advances.
 {¶ 3} On June 12, 2001, appellant broke into K.S.'s apartment while she was sleeping in her bed. K.S. was awakened to find a masked person standing next to her. K.S. began to scream so appellant put a pillow over her face to muffle the sound. Appellant then handcuffed K.S.'s hands to the headboard of the bed. Appellant then placed a latex glove into K.S.'s mouth to keep her from screaming. K.S. began choking on the glove but was eventually able to remove it from her mouth. Appellant then stuffed a sock into her mouth and placed duct tape over K.S.'s mouth and eyes. Once K.S. could not see, scream, or move her arms, appellant proceeded to undress and rape her.
 {¶ 4} During the rape, K.S. was able to free the duct tape from her mouth. She then asked appellant to unlock the handcuffs. Appellant removed the handcuffs from K.S.'s hands. Once K.S. was released she ran from the apartment. K.S. then noticed the masked man leaving her apartment. She ran after her assailant and was able to remove the mask. Once the mask was removed, K.S. recognized her assailant as appellant, her co-worker.
 {¶ 5} K.S. called 9-1-1 to report the rape. K.S. gave the operator a description of appellant, his car, and informed the operator where appellant lived. Dispatch transmitted a "be on the lookout" ("BOLO") for a possible rape suspect giving appellant's description and license plate number.
 {¶ 6} Ohio State Highway Patrol Trooper Gary Heaton spotted appellant's vehicle in Highland County with only one operable headlight. Trooper Heaton stopped appellant for the headlight violation. Trooper Heaton then verified that the license plate matched that of the BOLO. Appellant was detained for questioning. Trooper Heaton performed a pat-down search of appellant for safety purposes and the search revealed a pocketknife.
 {¶ 7} Detective Duane Weyand of the Wilmington Police Department arrived to transport appellant to Clinton County for questioning in connection with the reported rape. Det. Weyand performed a pat-down search of appellant before placing him in the cruiser. Det. Weyand removed handcuffs and latex gloves from appellant's pockets. Det. Weyand then read appellant his Miranda rights in the vehicle on the way to the Wilmington Police Department. During the drive, appellant and Det. Weyand had a conversation about the rape. At the Wilmington Police Department, appellant signed a Miranda waiver form and was interviewed. According to appellant, during the interview he asked the officers what he could be charged with and the officers replied "some form of sex without consent."
 {¶ 8} Appellant was charged with aggravated burglary, rape, kidnapping, and possession of criminal tools. Appellant pleaded no contest and was found guilty as charged. A sexual offender hearing was held and appellant was found to be a sexual predator. Appellant appeals the decisions raising four assignments of error.
Assignment of Error No. 1
 {¶ 9} "THE TRIAL COURT ERRED AND VIOLATED APPELLANT'S FOURTH AMENDMENT RIGHTS WHEN IT REFUSED TO ORDER APPELLANT'S STATEMENTS SUPPRESSED, BECAUSE THE EVIDENCE SHOWED THAT THOSE STATEMENTS WERE INVOLUNTARY."
 {¶ 10} Appellant argues his statements to police were involuntary because officers questioning him stated that he could receive a prison sentence of up to ten years. According to appellant, he asked the officers what he would be charged with and the officers replied "some form of sex without consent." Appellant argues the officers deceived him by downplaying what the ultimate charges might be and therefore his statements were involuntary and should have been suppressed.
 {¶ 11} An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by competent, credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586, 592. When considering a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19, 20. Relying on the trial court's findings, the appellate court determines "without deference to the trial court, whether the court has applied the appropriate legal standard." State v. Anderson (1995), 100 Ohio App.3d 688,691.
 {¶ 12} Absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct, a suspect's decision to waive his Fifth Amendment privilege against self-incrimination is made voluntarily. Statev. Otte, 74 Ohio St.3d 555, 562, 1996-Ohio-108; State v. Petitjean
(2000), 140 Ohio App.3d 517, 525. The voluntary nature of a defendant's statement is determined from the totality of the circumstances. Statev. Slagle (1992), 65 Ohio St.3d 597, 600; State v. Treesh,90 Ohio St.3d 460, 472, 2001-Ohio-4. A confession is involuntary if, under the totality of the circumstances, the defendant's will was overborne by the circumstances surrounding his giving of the confession. See Petitjean at 526.
 {¶ 13} The totality-of-the-circumstances test takes into consideration both the characteristics of the accused and the details of the interrogation. Id. Factors to be considered include the age, mentality and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.
 {¶ 14} In the present case the officers did not deceive appellant. Appellant in fact did receive a ten-year sentence for the rape charge. There is no evidence that appellant's will was overborne and that his capacity for self-determination was critically impaired because of coercive police conduct. Appellant is 55 years of age. Det. Weyand asked appellant if he had been drinking and appellant stated he had not. There are no facts suggesting Det. Weyand was coercive or that the time and setting of the interrogation was coercive. Furthermore, given the fact that appellant was informed that he could be charged with a serious crime, it is unlikely that the detective's failure to tell him that he could be charged with another related crime induced him to offer a statement. See State v. Sidlovsky (July 10, 1996), Lorain App. No. 95CA006253.
 {¶ 15} Considering the totality of the circumstances, we find appellant's confession was voluntarily obtained. Therefore, the first assignment of error is overruled.
Assignment of Error No. 2
 {¶ 16} "THE TRIAL COURT ERRED IN FAILING TO SUSTAIN THE SUPPRESSION MOTION BECAUSE THE STATE FAILED TO MEET ITS BURDEN OF PROVING THAT THE OFFICER WHO ISSUED THE DISPATCH HAD A REASONABLE BASIS ON WHICH TO SUSPECT APPELLANT OF AN OFFENSE."
 {¶ 17} Appellant argues that the state failed to establish a reasonable suspicion that appellant had committed the felony that was the basis for arrest. Appellant argues that the state failed to present evidence to indicate that the radio dispatch informing the officers was based on credible evidence.
 {¶ 18} In forming reasonable suspicion, a police officer may rely on outside information provided directly to him, such as tips from informants, or on information relayed to him via radio dispatch. Adamsv. Williams (1972), 407 U.S. 143, 147, 92 S.Ct. 1921; United States v.Hensley (1985), 469 U.S. 221, 232, 105 S.Ct. 675. However, where an informant's tip is relied upon, the informant's veracity and reliability and his basis for knowledge must be assessed under the totality of the circumstances to determine whether the tip establishes reasonable suspicion. Illinois v. Gates (1983), 462 U.S. 213, 238, 103 S.Ct. 2317. Where the tip is from an anonymous caller, the tip, standing alone, will rarely provide the reasonable suspicion necessary for an investigative stop. Alabama v. White (1990), 496 U.S. 325, 329, 110 S.Ct. 2412. However, where a tip is received from a known informant and the details of the tip are easily verifiable, that tip has greater indicia of reliability. Adams, 407 U.S. at 147. Regardless of whether the informant is known or anonymous, each case must be evaluated under the totality of the circumstances.
 {¶ 19} In this case, the arresting officer relied on information relayed to him from dispatch, which, in turn, was based on information from a verified telephone caller. K.S. identified herself and stated she was the victim of a rape. K.S. had a basis for knowledge that a crime occurred as the victim of that crime. K.S. identified appellant, his car, and his residence to the 9-1-1 operator. As appellant's co-worker, K.S. had a greater indicia of reliability and veracity as to the identity of her assailant. Based on the totality of circumstances, the tip establishes reasonable suspicion. Therefore the second assignment of error is overruled.
Assignment of Error No. 3
 {¶ 20} "THE TRIAL COURT ERRED IN FINDING THAT APPELLANT WAS A SEXUAL PREDATOR."
 {¶ 21} Appellant argues that there was insufficient evidence to support the sexual predator classification. In particular, appellant argues that there is no clear and convincing evidence that he is "likely to engage in the future in one or more sexually oriented offenses."
 {¶ 22} R.C. 2950.09(B)(2) provides that the trial court, in making a determination as to whether an offender is a sexual predator, shall consider all relevant factors, including, but not limited to:
 {¶ 23} "(a) The offender's age;
 {¶ 24} "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 25} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 {¶ 26} "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 {¶ 27} "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 28} "(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 {¶ 29} "(g) Any mental illness or mental disability of the offender;
 {¶ 30} "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 31} "(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one of more threats of cruelty;
 {¶ 32} "(j) Any additional behavioral characteristics that contribute to the offender's conduct."
 {¶ 33} The trial court must "consider" these factors before adjudicating an offender to be a sexual predator. State v. Thompson,92 Ohio St.3d 584, 588, 2001-Ohio-1288. This simply means that the trial court must reflect upon them or "think about them with a degree of care or caution." Id. at fn. 1. However, the trial court has the discretion to determine what weight, if any, to assign the factors. Id. at paragraph one of the syllabus.
 {¶ 34} When reviewing the statutory factors related to the sexual predator determination, the trial court may use reliable hearsay. Statev. Cook, 83 Ohio St.3d 404, 425, 1998-Ohio-291. The trial court is not required to find that the evidence presented supports a majority of the R.C. 2950.09(B)(2) factors before making the sexual predator classification, but may rely upon one factor more than another, depending upon the circumstances of the case. State v. Boshko (2000),39 Ohio App.3d 827, 840. Even a single conviction may support a finding that a defendant is a sexual predator in certain cases. Id.
 {¶ 35} At the sexual predator hearing, the state exhibited a signed letter from Albert Lakes, an inmate of the Clinton County Jail. The letter states that while appellant was at the Clinton County Jail he told Lakes that, "as soon as [appellant] gets out that he is going to rape and kidnap his victim's three granddaughters to get even with her. * * * [Appellant will] take them to a place in Tennessee way out in the woods and rape them over a period of time, * * * [he will impregnate them and then] keep them until they were too far along to get abortions and then let them go. He said this way his victim would have to remember what she had done to him every time she looked at the girls and their babies. * * * He said that if he had thought this woman would tell on him he would have [sodomized] her until she couldn't walk."
 {¶ 36} The trial court noted that it "considered all of the factors that are listed in the statute." While many of the statutory factors mitigated against a finding that appellant is a sexual predator, the court determined that appellant "displayed extreme cruelty, made threats, * * * [formulated] a well thought-out plan, and carried out an executed attack on this woman." The court stated that this conduct warranted classification as a sexual predator because, "I don't know what a predator is unless it's someone who prays [sic] on innocent victims and sneaks up on them in the middle of the night and invades both their home and their body."
 {¶ 37} Upon review of the record, we find that there is clear and convincing evidence which supports the trial court's determination that appellant is a sexual predator. Therefore, the third assignment of error is overruled.
Assignment of Error No. 4
 {¶ 38} "THE TRIAL COURT VIOLATED THE DOUBLE JEOPARDY CLAUSE OF THE OHIO AND U.S. CONSTITUTIONS WHEN IT SENTENCED APPELLANT FOR RAPE AND KIDNAP, WHEN THE OBJECT OF THE OFFENSES WAS THE SAME AND WHEN THE OFFENSES WERE COMMITTED WITH THE SAME ANIMUS."
 {¶ 39} Appellant argues that when a defendant is convicted of two or more statutory violations, when the offenses are similar, and when they are committed with the same intent, then the defendant may only be convicted of one offense. Appellant argues that the rape and kidnapping charges are allied offenses of similar import and that they were not committed with a separate animus. Appellant argues, therefore, the rape and kidnapping counts should have been merged.
 {¶ 40} The determination of whether two offenses consist of allied offenses of similar import turns on examination of the statutorily defined elements of the two offenses. State v. Donald (1979),57 Ohio St.2d 73, 74-75. The offense of forcible rape is defined in R.C. 2907.02(A)(2): "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 41} The pertinent portion of the kidnapping statute is R.C.2905.01(A)(4): "(A) No person, by force, threat, or deception, * * * shall * * * restrain the liberty of the other person, for any of the following purposes: (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will."
 {¶ 42} The restraint inherent in any threat or use of force generally makes any rape under R.C. 2907.02(A)(2) meet the elements of kidnapping under the restraint element of R.C. 2905.01(A)(4). In addition, the restraint element of rape may also meet the definition of kidnapping under R.C. 2905.01(A)(2), since it facilitates the commission of a felony. The indictment alleging kidnapping in the present case used the language from both of these subdivisions in setting forth the elements of the crime.
 {¶ 43} The question of whether kidnapping and rape will be considered to have been committed separately or with a common animus was addressed in the syllabus of State v. Logan (1979), 60 Ohio St.2d 126: "In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:
 {¶ 44} "Where the restraint * * * of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, * * * there exists a separate animus as to each offense sufficient to support separate convictions;
 {¶ 45} "Where the * * * restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions."
 {¶ 46} In the present case, we find that there was evidence of a separate animus sufficient to support independent convictions and sentencing on both kidnapping and rape. It is clear in this case that the restraint of K.S. subjected her to a substantial increase and risk of harm separate and apart from the underlying crime of rape. K.S. was bound with handcuffs, which not only facilitated the rape, but also must have substantially increased the danger of asphyxiation since she was hindered from moving her arms and hands to remove first the latex glove and then the sock which appellant placed in her mouth before taping it shut. We therefore find that the trial court did not err in finding that a separate animus existed for the crimes of kidnapping and rape in this case, and independent sentences on the two crimes were appropriate. Therefore, the fourth assignment of error is overruled.
Judgment affirmed.
POWELL and YOUNG, JJ., concur.