[Cite as *State v. Robinson*, 2013-Ohio-1345.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98564**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## STEVEN D. ROBINSON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-556418

**BEFORE:** Celebrezze, P.J., E.A. Gallagher, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 4, 2013

**ATTORNEY FOR APPELLANT**

Terry H. Gilbert
Friedman & Gilbert
1370 Ontario Street
Suite 600
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Stephanie Heibertshausen
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., P.J.:

**{¶1}** Defendant-appellant, Steven Robinson, appeals the judgment of the common pleas court overruling his motion to suppress evidence. After careful review of the record and relevant case law, we affirm the judgment of the trial court.

**{¶2}** On November 8, 2011, members of the Cleveland Police Department arrested appellant and codefendant, Ardarrius Williams, for multiple drug offenses. On December 2, 2011, appellant and Williams were indicted for drug trafficking in violation of R.C. 2925.03(A)(2), a felony of the third degree; drug possession in violation of R.C. 2925.11(A), a felony of the third degree; and possession of criminal tools in violation of R.C. 2923.24(A), a felony of the fifth degree.

**{¶3}** On February 24, 2012, appellant sought the suppression of evidence seized by the Cleveland Police Department in connection with a traffic stop of his vehicle on November 8, 2011. On April 23, 2012, the trial court held a suppression hearing and heard testimony from two witnesses, Officers Duane Taylor and Kevin Fairchild of the Cleveland Police Department. On April 24, 2012, the trial court denied appellant's motion, ruling that the stop was constitutional. Subsequently, appellant entered a plea of no contest to all counts. On May 21, 2012, appellant was sentenced to one year on each count, to run concurrently.

**{¶4}** Appellant now brings this timely appeal, raising one assignment of error for review:

I.   The trial court erred by denying appellant's suppression motion for lack of reasonable articulable suspicion.

Law and Analysis

{¶5} In his sole assignment of error, appellant argues that the trial court erred in denying his motion to suppress.

{¶6} Appellate review of the denial of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Carter*, 72 Ohio St.3d 545, 552, 1995-Ohio-104, 651 N.E.2d 965; *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992).

{¶7} Consequently, when reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8. However, an appellate court reviews de novo whether the trial court's conclusions of law, based on those findings of fact, are correct. *State v. Anderson*, 100 Ohio App.3d 688, 691, 654 N.E.2d 1034 (4th Dist.1995).

{¶8} At the suppression hearing, the following facts were presented to the trial court. On November 8, 2011, at approximately10:30 p.m., the Cleveland Police Department received a report of a robbery and shooting at the intersection of West 38th Street and Denison Avenue in Cleveland, Ohio. Initial reports described the shooter as

being a Hispanic male wearing all black, medium build, approximately six feet tall, and in his mid twenties.

{¶9} While on foot patrol, Officer Maffo-Judd observed an individual matching the shooter's description running southbound on West 43rd Street. Officer Maffo-Judd further described the possible shooter as being a "dark" complexioned Hispanic male with facial hair; approximately 6' to 6'1" tall; with a "thinner build"; wearing a black jacket, dark jeans, and black stocking cap.

{¶10} Approximately 30 minutes after the initial dispatch, Cleveland police communications received a call from an identified citizen, who indicated that he was aware that officers were investigating the recent shooting in the area. The caller indicated that his neighbor had overheard a male talking on a cell phone, saying "[h]urry up and pick me up because the cops are looking for me." The caller informed the police that his neighbor described the individual as a black male walking down West 34th Street near Highview Avenue wearing blue jeans, a red sweatshirt, and a black hat. The description was then broadcast to officers in the local area.

{¶11} Patrol Officer Duane Taylor testified at the suppression hearing that he assisted in locating the shooting suspect. Officer Taylor testified that, based on the information he received from dispatch, he parked his patrol vehicle near West 34th and Louisiana Avenue and began looking for suspicious activity. While in his patrol vehicle, Officer Taylor observed a white Chevy Impala parked on the apron of a nearby driveway. Officer Taylor testified that the way the Impala was parked raised his suspicions due to

the hour of the night. Minutes later, Officer Taylor observed a Hispanic or light-skinned black male with facial hair, approximately six feet tall, medium build, wearing a red shirt and jeans, come through a yard and enter the front passenger seat of the Impala.

{¶12} Officer Taylor testified that he followed the Impala northbound on West 33rd Street. When the Impala reached the intersection of West 33rd and Archwood, Officer Taylor activated his spotlight on the window of the passenger side of the Impala. Officer Taylor confirmed that the passenger appeared to match the description of the person of interest in the shooting. At that point, Officer Taylor requested backup and initiated an investigative stop of the Impala. When Officer Taylor approached the vehicle, he immediately observed appellant holding a large brick-like object that appeared to be marijuana.

{¶13} Although the Cleveland police later made a determination that appellant and codefendant Williams were not involved in the shooting, they were arrested based on the officer's recovery of approximately four pounds of marijuana from their vehicle.

{¶14} We find that the trial court's findings of fact were supported by competent and credible evidence. Accordingly, we turn to the constitutionality of the search and seizure.

{¶15} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Searches conducted outside the judicial process, by officers lacking a prior judicial warrant, are per se unreasonable and subject to a few

specifically established exceptions. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One of those exceptions is the rule regarding investigative stops announced in *Terry*. Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin*, 2d Dist. No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry*, *supra*.

{¶16} We are mindful of the U.S. Supreme Court's recognition that "[i]n order to satisfy the reasonableness requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government * * * is not that they always be correct, but that they always be reasonable." *Illinois v. Rodriguez*, 497 U.S. 177, 185-186, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). Further, "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Hill v. California*, 401 U.S. 797, 804, 91 S.Ct. 1106, 28 L.Ed.2d484; *see also Brown v. King*, 5th Dist. No. 2008-CA-00165, 2009-Ohio-4957. Thus, in evaluating the facts and inferences supporting the stop, a court must consider the totality of the circumstances as "viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *State v. Bobo*, 37 Ohio St.3d 177, 179, 524 N.E.2d 489 (1988). This court has found that "a report of recent gunshots must be taken into consideration under the totality of the circumstances test." *State v. Johnson*, 8th Dist. Nos. 71249 and 71250, 1997 Ohio App. LEXIS 4710 (Oct. 23, 1997).

**{¶17}** In a case like this where the police officers who made the stop received information from other police officers, the collective knowledge doctrine applies. That doctrine states that law enforcement officers cooperating in an investigation are entitled to rely on each other's knowledge of facts when forming the conclusion that a suspect has committed or is committing a crime. *United States v. Hensley*, 469 U.S. 221, 231, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). This doctrine is grounded in the realization that "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." *Id*. at 231. The admissibility of the evidence uncovered during a stop based on information derived from other officers does not rest on whether the officers relying on a dispatch or flyer "were themselves aware of the specific facts which led their colleagues to seek their assistance," but instead on whether the officers who issued the dispatch possessed reasonable suspicion to make the stop. *Id*. at 231.

**{¶18}** Factors relevant in assessing reasonable suspicion in this case include the specificity of the description of the suspect, the number of people in the area, where the person was stopped, and how long ago the crime occurred. *See United States v. Goodrich*, 450 F.3d 552, 561 (3d Cir.2006). Even though a description is less-than specific, other factors supporting the stop can exist so long as the facts known yield a limited pool of suspects. *United States v. Broomfield*, 417 F.3d 654, 655 (7th Cir.2005).

{¶19} Appellant urges this court to find that this case is analogous to *State v. Stewart*, 193 Ohio App.3d 716, 2011-Ohio-2910, 953 N.E.2d 886 (8th Dist.). In *Stewart*, a shooting occurred at approximately 1:30 a.m. in a residential neighborhood. The officers who responded were advised that there were two suspects, including a male described as around 5'10" to 6' tall, in his late 20s or early 30s, wearing dark clothing; and a female. Approximately five minutes after the broadcast, officers saw Stewart and a female walking through a parking lot. The officers stopped Stewart and subsequently arrested him after discovering a gun in his waistband. In reversing the trial court's denial of Stewart's motion to suppress, this court determined that the description relayed to the arresting officers was not specific enough to justify the investigative stop. This court stated,

> given the character of the neighborhood and the late hour, the description of the male would have matched just about any other male who might have been out at that time of night. Even so, Stewart did not match the description as he was significantly younger and shorter than the described shooter.

*Id*. at 889.

{¶20} On review, we find *Stewart* to be distinguishable from the case at bar. Unlike the facts presented in *Stewart*, the basis for Officer Taylor's investigative stop of appellant's vehicle derived from information that we are unable to characterize as "vague." Here, Officer Taylor was provided with a first-hand description from an officer who was previously in hot pursuit of the suspect just minutes after the initial shooting occurred. The officer provided information relating to the direction the suspect was

running and indicated that the suspect was a dark-complexioned male with facial hair; approximately 6' to 6'1" tall; wearing a black jacket, dark jeans, and black stocking cap. Additionally, dispatch provided Officer Taylor with further information obtained from an identified citizen who lived in the area where the shooting had occurred. The identified citizen informed the police that his neighbor had overheard an individual state while talking on his cell phone, "[h]urry up and pick me up because the cops are looking for me." The description provided by the identified citizen was generally consistent with the description given by Officer Maffo-Judd, with the exception that the identified citizen stated that the suspect was wearing a red shirt and not a black jacket. However, as addressed by Officer Taylor, it is not unusual for a suspect to "peel off layers of clothing to try and change their appearance" as they flee from a crime scene.

{¶21} Furthermore, the circumstances surrounding Officer Taylor's initial observation of codefendant Williams were significantly different from those presented in *Stewart*. In *Stewart*, the officers conducted an investigatory stop of the defendant after observing him do "nothing more suspicious than walking though a parking lot in the company of a female." By contrast, in the case sub judice, Officer Taylor's decision to stop appellant's vehicle derived from conduct he viewed as suspicious in light of recent information he received from dispatch. As stated, Officer Taylor testified that he initially observed an individual matching the suspected shooter's description walk through the front yards of the neighborhood toward a vehicle that Officer Taylor described as suspiciously waiting on the apron of a nearby driveway. We recognize that

codefendant Williams's act of walking through a front yard instead of using sidewalks and getting into a parked vehicle does not generally give rise to criminal suspicion. However, in the case at hand, Officer Taylor made these observations with knowledge that the suspected shooter was believed to be in the general area and was last seen by officers "cutting" through the neighborhood yards and alleyways. Thus, unlike the circumstances presented in *Stewart*, we find Officer Smith's suspicions to be reasonable in this matter.

{¶22} Viewing the totality of the circumstances collectively through the eyes of a reasonable and cautious police officer, we find that Officer Taylor, and the officers who issued the various dispatches, possessed a reasonable suspicion to believe that codefendant Williams had engaged in criminal activity, thereby justifying the investigatory stop of appellant's vehicle.

{¶23} We recognize that, pursuant to the standard set forth in *Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 1999-Ohio-68, 720 N.E.2d 507, had the identified citizen's "second-hand" tip been the only information available to the officers at the time of the investigatory stop, it may not have been sufficient to withstand appellant's Fourth Amendment challenges.

> Where an officer making an investigative stop relies *solely* upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity. The appropriate analysis, then, is whether the tip itself has sufficient indicia of reliability to justify the investigative stop. * * * Typically, a personal observation by an informant is due greater reliability than a secondhand description. (Emphasis added.)

*See id.* at paragraph one of the syllabus.

{¶24} However, this is not the case where the information possessed by the police stemmed solely from an informant's tip. *See State v. Phillips*, 4th Dist. No. 06CA10, 2006-Ohio-6710, ¶ 15. Rather, the tip provided in the case at hand was considered in conjunction with the fact that codefendant Williams fit the physical description provided by a first responding officer; information that did meet the requisite level of suspicion necessary to warrant the stop of appellant's vehicle. Thus, the tip merely served to supplement the totality of the information available to the officers at the time of their investigation and was reasonably utilized to narrow the area of the search and the pool of potential suspects.

{¶25} For these reasons, we find no error in the trial court's decision to deny the motion to suppress evidence. Accordingly, we hereby overrule appellant's assignment of error and affirm the trial court's judgment.

{¶26} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of

the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

EILEEN T. GALLAGHER, J., CONCURS;
EILEEN A. GALLAGHER, J., CONCURS IN JUDGMENT ONLY